# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Texas Entertainment Association, Incorporated; Lone Starr Multi-Theaters, Limited, doing business as New Fine Arts West; XTC Cabaret, Incorporated, doing business as XTC Cabaret Austin; RCI Dining Services (Round Rock), Incorporated, doing business as Rick's Cabaret,

*Plaintiffs-Appellants,*

v.

Ken Paxton, Attorney General, State of Texas; Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission.

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

## BRIEF OF APPELLANTS

---

J. MICHAEL MURRAY (Ohio 0019626)
jmmurray@bgmdlaw.com
WILLIAM C. LIVINGSTON (Ohio 0089538)
wlivingston@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 PUBLIC SQUARE SUITE 2200
CLEVELAND, OHIO 44113-1949
(216) 781-5245 / Fax: (216) 781-8207

CASEY T. WALLACE (Texas 00795827)
cwallace@wallaceallen.com
WALLACE & ALLEN, LLP
440 Louisiana Suite 590
Houston, Texas 77002
Tel. (713) 227-1744 / Fax: (713) 600-0034

Attorneys for Plaintiffs-Appellants

# CERTIFICATE OF INTERESTED PERSONS

Case No. 24-50434
*Texas Entertainment Assoc. Inc., et. al., v. Paxton, et. al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.  Texas Entertainment Association, Inc., Plaintiff-Appellant;

2.  Lone Star Multi- Theatres, Ltd., d/b/a New Fine Arts West, Plaintiff-Appellant;

3.  XTC Cabaret, Inc.,d/b/a XTC Cabaret Austin, Plaintiff-Appellant whose parent corporation is RCI Hospitality Holdings, Inc., a publicly traded corporation that holds 10% or more of XTC Cabaret, Inc's stock;

4.  RCI Dining Services (Round Rock), Inc., d/b/a/ Ricks Cabaret, Plaintiff-Appellant, whose parent corporation is RCI Hospitality Holdings, Inc., a publicly traded corporation that holds 10% or more of RCI Dining Services (Round Rock), Inc's stock.

5.  RCI Holdings Hospitality, Inc., a publicly traded corporation and parent of Plaintiff-Appellants XTC Cabret, Inc. and RCI Dining Services (Round Rock), Inc. holding 10% or more of their stock.

6.  J. Michael Murray, Berkman, Gordon, Murray & DeVan, Attorney of Record for Plaintiffs-Appellants;

7.  William C. Livingston Berkman, Gordon, Murray & DeVan, Attorney of Record for Plaintiffs-Appellants;

8.  Casey T. Wallace, Wallace & Allen, LLP, Attorney of Record for Plaintiffs-Appellants;

9.  Ken Paxton, Attorney General of Texas, Defendant-Appellee;

10.	Ed Serna, Executive Director of the Texas Workforce Commission, Defendant-Appellee;

11.	Benjamin Wallace Mendelson, Assistant Solicitor General of Texas, Attorney of Record for Defendants-Appellees.

/s/ J. Michael Murray     
Attorney of Record for Plaintiffs-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

This case involves important First Amendment issues. The factual record is extensive and the legal analysis involved is nuanced. Oral argument, Appellant submits, will offer this Court an opportunity to fully explore the issues and will assist in the decisional process.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    SB 315 PROHIBITS FIRST AMENDMENT BUSINESSES FROM
      EMPLOYING OR CONTRACTING WITH 18-20 YEAR OLDS . . . . . . . . 3

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  TESTIMONY AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.   Plaintiffs' Expert, Angelina Spencer-Crisp . . . . . . . . . . . . . . . . . . . 10

      B.   Defendants' Expert, Dr. Vanessa Bouche . . . . . . . . . . . . . . . . . . . . 13

      C.   Defendants' Fact Witness, Attorney Cara Foos Pierce . . . . . . . . . . . 17

II.   THE DISTRICT COURT'S FINDINGS OF FACT AND
      CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Summary Of The Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Page

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.      AS APPLIED TO ADULT BOOKSTORES/ARCADES AND TO
        ADULT NIGHTCLUB PERSONNEL OTHER THAN
        ENTERTAINERS, S.B. 315 IS UNCONSTITUTIONAL . . . . . . . . . . . . 27

        A.      Adult Bookstore/Arcade Employees . . . . . . . . . . . . . . . . . . . . . . . 30

        B.      Non-Performing Adult Nightclub Employees. . . . . . . . . . . . . . . . . 32

        C.      Under This Court's Decision in *Illusions–Dallas Private Club,
                Inc. v. Steen*, 482 F.3d 299 (5th Cir. 2007), the Prohibition on
                Sexually Oriented Businesses Employing Adults Ages 18-20 in
                Non-Performing Jobs Must Further the Governmental Interest In
                Reducing Human Trafficking in a Narrowly Tailored Way . . . . . . . 34

II.     EVEN AS APPLIED TO THE PROHIBITION ON SEXUALLY
        ORIENTED BUSINESSES HIRING 18-20 YEAR-OLD ADULTS AS
        DANCERS, S.B. 315 IS UNCONSTITUTIONAL . . . . . . . . . . . . . . . . . . 37

III.    S.B. 315 IS ALSO UNCONSTITUTIONAL BECAUSE
        DEFENDANTS HAVE OFFERED NO EVIDENCE THAT OTHER
        MEASURES TO COMBAT HUMAN TRAFFICKING WOULD BE
        INEFFECTIVE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

IV.     S.B. 315 IS UNCONSTITUTIONALLY OVERBROAD UNDER THE
        FIRST AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . 40

*Assoc. of Clubs Execs. v. City of Dallas,*
    83 F.4th 958 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963) . . . . . . . . . . . . . . . . . . . . . . . 31

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 566 (1991) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bd. of Educ. v. Pico*, 457 U.S. 853 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Buehrle v. City of Key W.*,
    813 F.3d 973 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Citizens United v. Federal Election Com'n*,
    558 U.S. 310 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*City of Austin v. Reagan National Advertising*
    *of Austin*, LLC, 142 S. Ct. 1464 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*City of Los Angeles v. Alameda Books, Inc.*,
    535 U.S. 425 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 37

*City of Renton v. Playtime Theatres*, 475 U.S. 41 (1986) . . . . . . . . . . . . . . . . 23, 24

*DC Operating, L.L.C., v. Paxton*,
    100 F.4th 657 (5th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Doe I. v. Landry*, 909 F.3d 99 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . 23, 37, 38, 41

*Hang On, Inc. v. City of Arlington*, 65 F. 3d 1248 (5th Cir. 1995) . . . . . . . . . . . 36

*Heller v. New York*, 413 U.S. 483 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hess Corp v. Schlumberger Tech. Corp.*,
    26 F. 4th 229 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Illusions–Dallas Private Club, Inc. v. Steen*,
    482 F.3d 299 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 26, 30, 34, 35, 37

*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979) . . . . . . . . . . . . . . . . . . . . . . 31

*Macon v. Maryland*, 472 U.S. 463 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*McConnell v. Federal Election Com'n*, 540 U.S. 93 (2003) . . . . . . . . . . . . . . . . 33

*McCullen v. Coakley*, 575 U.S. 464 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 41

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000) . . . . . . . . . . . . . . . . . . . . 32

*Pope v. Illinois*, 481 U.S. 497 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Roaden v. Kentucky,* 413 U.S. 496 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Smith v. California*, 361 U.S. 147 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Turner Broad Sys., v. FCC*, 512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017) . . . . . . . . . . . . . . . . . 32

*U. S. v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) . . . . . . . . . . . . . . . . . . . . 2, 39

*United States v. O'Brien*, 391 U.S. 367 (1968) . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Page

*United States v. Stevens*, 559 U.S. 460 (2010). . . . . . . . . . . . . . . . . . . . . . . . . 43, 44


**CONSTITUTIONAL PROVISIONS**

United States Const., amend I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

United States Const., amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 45


**STATUTES, RULES AND REGULATIONS**

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

28 U.S.C. §1343(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C.  §1343(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

42 U.S.C. §1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Dallas Ord. Sed. 41A-7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Fed. R. App. P. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Crim. Pro. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Page

Federal Rules of Criminal Pro. 8(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Florida Revised Statute §787.29(3)(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Indiana Code  §7.1-3-23-20.5(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Maine Revise Statute Title 26, §879(3)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Tex. Civ. Prac. & Rem. Code §125.0015(a)(19) . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Civ. Prac. & Rem. Code §125.0015(a)(22) . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Civ. Prac. & Rem. Code §140A.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Lab. Code 51.016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Tex. Lab. Code. §51.016(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Loc. Gov't Code 243.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6, 34

Tex. Loc. Gov't Code 243.004  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Pen. Code §20A.02(A)(7)(J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Pen. Code §43.251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Pen. Code §43.251(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Pen. Code §43.251(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tx Bus. Com. Code 114.0051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Tx Bus. Com. Code 114.0053 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## STATEMENT OF JURISDICTION

The district court's jurisdiction in this action challenging the constitutionality of S.B. 315 and seeking declaratory and injunctive relief was conferred by 28 U.S.C. §§1331, 1343(a), 42 U.S.C. §§1983 and 1988, and 28 U.S.C. §§2201 and 2202.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291, because it is an appeal of the final judgment of the United States District Court for the Western District of Texas. Following a bench trial, the district court entered its findings of fact and conclusions of law and final judgment on April 30, 2024. ROA.11388-1410, ROA. 11411. Plaintiffs-Appellants timely filed their notice of appeal on May 28, 2024. ROA 11412. *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether, applying intermediate scrutiny, S.B. 315, which prohibits sexually oriented businesses from employing or contracting with, in any capacity, adults ages 18-20, is unconstitutional under the First and Fourteenth Amendments as applied to adult bookstores, adult video stores and adult arcades and as applied to adult nightclubs with respect to personnel other than dancers.

2.  Whether S.B. 315 is unconstitutional under the First and Fourteenth Amendments as applied to adult nightclubs with respect to dancers.

3.  Whether S.B. 315 is unconstitutional under the First and Fourteenth Amendments when there is no evidence that other measures to combat human

trafficking would be ineffective.

4.     Whether S.B. 315 is unconstitutionally overbroad under the First and
       Fourteenth Amendments

5.     Whether the district court erred in rejecting the claims embraced in Issues 1
       through 5 and upholding S.B. 315 under the First and Fourteenth Amendments.

6.     Whether the district court erred in upholding S.B. 315 under the First and
       Fourteenth Amendments, despite its factual finding that it plainly regulates
       more than is necessary to stop sex trafficking.

**STATEMENT OF THE CASE**

**INTRODUCTION**

The Supreme Court has held that "nonobscene, sexually explicit materials
involving persons over the age of 17 are protected by the First Amendment." *U. S. v.
X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994).

At issue in this case is whether the State of Texas can prohibit adults between
the ages of 18-20 from simply working in an adult bookstore or in an adult nightclub.

Indeed, Texas's S.B. 315 prohibits *all* sexually oriented businesses from
contracting with all 18-20 year old adults in *any* capacity. The State's justification for
its law is to reduce human trafficking.

But Defendants have not offered any evidence that a single employee of an

2

adult bookstore, adult video store or adult arcade, regardless of age, has ever been a victim of trafficking. Nor have they offered evidence that employees of adult nightclubs who work in the various positions at those businesses, other than as entertainers, have been trafficked or are at risk of being trafficked. Rather, the evidence offered by Defendants focused on attempting to establish that dancers at adult nightclubs who are 18-20 years old are vulnerable to becoming victims of sex trafficking. Indeed, Defendants' own expert witness admitted that the State's interest in reducing human trafficking could be achieved if S.B. 315 were more narrowly drawn to apply only to 18-20 year old dancers at adult nightclubs.

On this record, the district court made factual findings, therefore, that S.B. 315 "plainly regulates more than necessary to stop human trafficking, as it prohibits all employment of 18-20 year olds..." ROA. 11406. Despite this factual finding, the district court upheld the law.

I.     SB 315 PROHIBITS FIRST AMENDMENT BUSINESSES FROM EMPLOYING OR CONTRACTING WITH 18-20 YEAR OLDS.

The Texas Legislature passed S.B. 315 in 2021. Tex. S.B. 315, 8th Leg. R.S. (2021). ROA.10412-10418.

S.B. 315 prohibits all adult Texans between the ages of 18 and 20 from working in any capacity at or for any "sexually oriented business" and makes it

unlawful for any sexually oriented business to employ or contract with adults between the ages of 18 and 20 for any position.[1]

To accomplish that end, S.B. 315 amended portions of the Texas Civil Practice & Remedies Code, the Texas Penal Code, and the Texas Labor Code. Under those amendments, if a sexually oriented business employs or contracts with a person between the ages of and 18 and 20, it faces charges of being a common nuisance as well as civil and criminal penalties. *See* ROA. 10412-10418 (amending Tex. Civ. Prac. & Rem. Code §125.0015(a)(19),(22); Tex. Penal Code §43.251(a)-(c); Tex. Lab. Code. §51.016(b); *see also* Tex. Pen. Code §20A.02(A)(7)(J); Tex. Civ. Prac. & Rem. Code §140A.002).

The justification advanced for the law was that it would reduce human trafficking, a claimed secondary effect of sexually oriented businesses. Tex. S.B. 315, 87th Leg. R.C. (2021).

"Sexually oriented businesses," as used in S.B. 315 is defined by Section 243.002 of the Local Government Code. ROA. 10409. That Section provides as follows:

> In this chapter, "sexually oriented business" means a sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie

---

[1] Thus, 18-20 year old adults in Texas may patronize a sexually oriented business but are forbidden from being employed by a sexually oriented business.

theater, adult video arcade, adult movie arcade, adult video store, adult
motel, or other commercial enterprise the primary business of which is
the offering of a service or the selling, renting, or exhibiting of devices
or any other items intended to provide sexual stimulation or sexual
gratification to the customer.

Tex. Loc. Gov't Code 243.002.

Thus, sexually oriented businesses are defined by the content of the
constitutionally protected expression that they disseminate, triggering the application
of S.B. 315.

For example, in the case of an adult bookstore, adult video store or adult video
arcade, the prohibitions imposed by S.B. 315 are triggered by the content of sexually
explicit media items carried by the business. Similarly, adult night clubs become
subject to the burdens of S.B. 315 by presenting live erotic dance performances to
their audiences.

In both instances, the application of S.B. 315 depends on the content of
expression that is sold or offered at adult bookstores, adult video stores and adult
video arcades, or presented at adult nightclubs. Indeed, this is reinforced by Section
243.004 of the Local Government Code, which exempts from its regulations
bookstores, movie theaters and video stores which do *not* offer sexually explicit
media items.  *See* Tex. Loc. Gov't Code 243.004 (exempting from regulation "a
bookstore, movie theater, or video store, unless that business is an adult bookstore,

adult movie theater, or adult video store under Section 243.002.").

## II.    PROCEDURAL HISTORY

Plaintiff-Appellant Texas Entertainment Association ("TEA") is a trade group whose membership consists of adult cabarets and adult bookstores subject to S.B.315's age-based restrictions. ROA. 10408. Once S.B. 315 went into effect, numerous sexually oriented businesses and TEA members were forced to immediately terminate droves of 18-20 year-old men and women who worked at their establishments in various roles.

In June of 2021, the Texas Entertainment Association and certain individual Plaintiffs filed a complaint pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§1331 and 1343(a)(3), challenging the constitutionality of S.B. 315, seeking declaratory and injunctive relief. Plaintiffs also filed a motion for a preliminary injunction. ROA. 30-66, ROA. 80-106.

Defendant Ken Paxton, sued in his official capacity, is the Attorney General of the State of Texas and the State's chief law enforcement officer. ROA. 10408.

Defendant Ed Serna, sued in his official capacity, is the Executive Director of the Texas Workforce Commission. He is charged with the day-to-day operations of the agency, including implementation of policies set by the Commission and enforcement of provisions of the labor code. ROA. 10408, ROA. 494, ROA.465.

A hearing was held on the Plaintiffs' motion for a preliminary injunction on July 16, 2021. Kevin Richardson, who served as the representative of Plaintiff TEA for the purposes of this lawsuit, testified that he had to lay off between 732 and 842 employees at the five different adult nightclubs with which he is affiliated. ROA.11496-11497, ROA.11499. He estimated that well over 10,000 employees have been laid off at sexually oriented businesses as a result of S.B. 315. ROA.11499.

On July 20, 2021, the Court issued an order denying the motion. ROA. 349-364.

The Court found that, at that stage of the proceedings, Plaintiffs had not met their burden of demonstrating a likelihood of success on the merits. However, it noted that "discovery may reveal that the State's purported interest in curbing trafficking is not served at all by S.B. 315's age restrictions." ROA. 360-361.

On April 29, 2022, Plaintiffs filed an Amended Complaint, adding three separate sexually oriented businesses as Plaintiffs. ROA.462-484.[2]

More specifically, Plaintiff-Appellant Lone Starr Multi-Theatres, Ltd. dba New

---

[2] Some individuals, who were between the ages of 18-20 years old at the time the lawsuit was filed, were also named as plaintiffs in the original and amended complaint. Those individuals had turned the age of twenty-one by the time of the trial in this case. At trial, the district court granted Defendants' unopposed motion for those individuals to be dismissed from the case on the ground that, under Fifth Circuit case law, the individuals' claims were moot. ROA.11698-11699.

Fine Arts West ("New Fine Arts") is an adult bookstore and adult video arcade subject to S.B. 315's age restrictions. *Id.* Plaintiff-Appellant RCI Dining Services (Round Rock), Inc., dba Ricks Cabaret and Plaintiff-Appellant XTC Cabaret, Inc. dba XTC Cabaret Austin ("XTC") are both adult cabarets subject to S.B. 315's age restrictions

Plaintiffs have all alleged that S.B. 315 burdens their constitutional rights and the parties have stipulated that the TEA's members, as well as Plaintiffs New Fine Arts, Ricks' Cabaret, and XTC Cabaret are all subject to S.B. 315's burdens. ROA. 472-476, ROA.10408.[3]

After engaging in discovery, including the taking of depositions, exchanging expert witness reports and deposing experts, the parties filed cross-motions for summary judgment. ROA. 989-1027, 6221-6287.

_____

[3] In *DC Operating, L.L.C., v. Paxton,* 100 F.4th 657 (5th Cir. 2024), an adult nightclub and some of its employees challenged S.B. 315. The adult nightclub alleged that the law burdened only the constitutional rights of its employees and did not allege that its own rights were burdened. *Id*. at 658. At the time of oral argument, on appeal from the denial of the plaintiffs' motion for a preliminary injunction, the individual employees had turned 21, rendering their claims moot. Because the adult nightclub did not allege that its own rights had been burdened, this Court held that it did not have standing under Article III and dismissed the appeal for lack of jurisdiction without reaching the merits. *Id*. at 659. In this case, Plaintiffs have all alleged that their constitutional rights have been burdened by S.B. 315 and the parties stipulated that Plaintiffs are subject to the law's burdens. Thus, there is no issue of standing here. Moreover, *DC Operating* did not involve the First Amendment rights of any adult bookstores, adult video stores or adult arcades, as this case does.

The motions were referred to a Magistrate Judge, who issued his Report and Recommendation on July 26, 2023. ROA 10333-10341. The Magistrate Judge recommended that Plaintiffs' motion for summary judgment be denied and that Defendants' motion be granted only to the extent that intermediate scrutiny should apply to Plaintiff's First Amendment claims and denied in all other respects. *Id.* Both parties filed objections to the report and recommendation. ROA.10342-10352, 10353-10362.

On September 21, 2023, the district court adopted the Magistrate's Report and Recommendation and the matter was set for a bench trial. ROA. 10372-10375.

On January 22, 2024, the Court held a bench trial. In order to streamline the trial, the parties filed a joint stipulation of facts. ROA. 10407-10410.

In addition, the parties agreed to offer certain portions of the record they each had made in support of their summary judgment motions. The record included the transcript from the July 16, 2021 preliminary injunction hearing; S.B. 315's Legislative Record; deposition excerpts from corporate representatives of Plaintiff TEA, Plaintiff New Fine Arts, Plaintiff XTC and Plaintiff Ricks Cabaret; deposition excerpts from Plaintiffs' expert, Angelina Spencer-Crisp and the exhibits attached to her report; Defendants' interrogatory responses; deposition excerpts from the Defendant's fact witness, former Assistant United States Attorney Cara Foos Pierce

and the large quantity of documentary exhibits used during her deposition; additional documents which Ms. Pierce referenced in her deposition that Plaintiffs later obtained; and deposition excerpts from Defendants' expert, Dr. Vanessa Bouche. Plaintiffs also filed objections to certain portions of the Defendants' summary judgment record. ROA 10387-10406, 10419-11247. *See also* ROA.11693-11695. At trial, the record was offered and admitted subject to the trial court's review of objections. ROA. 11696-11695, 11871.

Three witnesses testified at trial. Plaintiffs called their expert, Angelina Spencer-Crisp, and Defendants called their expert, Dr. Vanessa Bouche, and their fact witness, attorney Cara Foos Pierce.[4]

III.   TESTIMONY AT TRIAL

A.   Plaintiffs' Expert, Angelina Spencer-Crisp

 Plaintiffs presented Angelina Spencer-Crisp as their expert in this matter. Ms. Spencer-Crisp graduated summa cum laude from Ursuline College with a Bachelor of Arts degree in Psychology. ROA.11626.  She possesses a Master of Professional Studies in Strategic Public Relations from George Washington University's Graduate

---

[4] As will be discussed later in this brief, *infra* at 17-18, the district court erroneously considered Ms. Pierce's testimony as expert testimony when she testified only as a fact witness. ROA.11398.

School of Political Management, where she was co-valedictorian of her class. *Id.* Ms. Spencer-Crisp has been studying the issue of human trafficking since 2008. ROA. 11626-11627.

Ms. Spencer-Crisp has also worked in numerous capacities in the adult nightclub industry, including as a dancer, bartender, waitress, bookkeeper, shift manager, and manager and eventually as a co-owner of an adult nightclub. ROA 11627.

In 2003, Ms. Spencer-Crisp became the Executive Director of ACE National, a federally registered trade association for the adult nightclub industry, executives and owners. ROA. 11628.

Ms. Spencer-Crisp also co-founded COAST (Club Operators Against Sex Trafficking). In that capacity, she has worked with agents from ICE and the Department of Homeland Security. ROA 11628-11630. Working with those federal agents, she helped implement training to persons in the adult entertainment industry to recognize and report incidents of human trafficking. ROA. 11631-11632. As a result of her efforts, Ms. Spencer-Crisp was a nominee for an award by the Director of Homeland Security for meeting the mandates of Congress and the White House in the battle against human trafficking. ROA.11633.

Ms. Spencer-Crisp conducted a study and wrote a paper on the subject of S.B.

315. ROA.11635. Ms. Spencer-Crisp examined data from: 1) reports prepared by the Federal government and the State of Texas on the subject of human trafficking over the course of several years; (2) information from Polaris, which is the most comprehensive collection center for data of human trafficking in the United States; (3) reports and data from the Human Trafficking Institute; and, (4) reports and data from academia. ROA.11635-11636.

Ms. Spencer-Crisp concluded from her study of these materials, her training and experience, that the top venues for human trafficking were hotels, online platforms and illicit massage parlors and that less than one percent of human trafficking occurs in strip clubs. ROA.11637.

Ms. Spencer-Crisp readily acknowledged each of these wide-ranging sources suffers from the fact they do not provide complete data and that several of them point out that they should not be used to determine the prevalence of trafficking. ROA. 11637-11638. But she also testified that, in her opinion, there is no superior data. ROA 11638-11639, 11642. Nevertheless, these shortcomings led the district court to "have significant doubts about the reliability of [her] empirical research" and to find the testimony of Defendants' witnesses, Dr. Bouche and Ms. Pierce, to be more persuasive. ROA. 11404.

B.     Defendants' Expert, Dr. Vanessa Bouche

Dr. Bouche is a former professor at Texas Christian University. She has an undergraduate degree from Columbia University, majoring in history and minoring in religion. ROA.11702. She also possesses a Masters degree in Public Affairs from the University of Texas and a Masters and Ph.D. in Political Science from the Ohio State University. ROA. 11703-11706. She was retained by Defendants to render an opinion as to whether S.B. 315 "will reduce human trafficking." ROA.11760.

As the district court summarized:

> Dr. Bouche testified and provided an expert report arguing that S.B. 315 will reduce sex trafficking at SOBs. (Bouche Rep., Dkt. 71-6, at 6). Her report shows that 24% of sex trafficking victims experienced trafficking at a strip club, while another survey she conducted put the figure at 28%. (*Id.* at 4–6). However, the most frequent locations of trafficking were found to be street prostitution, online prostitution, and escort services, rather than SOBs. (*Id.* at 188). Dr. Bouche describes various push-pull factors that lead women into trafficking and identifies their age and psychological maturity as a key factor in determining a person's susceptibility to trafficking. (*Id.* at148). Dr. Bouche also stated that, based on her review of various studies, the average age of entry into sex trafficking is 18-to-20 years. (*Id.* at 146).

ROA. 11399.

At her deposition and on cross-examination at trial, the following was established. Dr. Bouche created an open-access searchable data platform of federally prosecuted human trafficking cases. ROA 11710-11711. She testified she has studied

all the federal trafficking prosecutions from 2000 to 2021. ROA. 11780-11781.

Dr. Bouche found 1,500 federally-prosecuted cases and 29 involved sex trafficking inside strip clubs. *Id.*

In other words, over the 21 year period Dr. Bouche examined, mathematically, there would be 1.4 trafficking cases involving a strip club per year in the United States. ROA. 916-17. Of the 1,500 total, only 1.9% involved a strip club according to her report. And of those, according to the list she provided after her deposition, only 5 were cases in Texas. That represents 3/10 of 1% of federally prosecuted human trafficking cases over the 21 year period. ROA.932; ROA.11784-11785.

Dr. Bouche also collaborated with a non-profit called Thorn to put together a survey in 2012 of 115 survivors of domestic minor sex trafficking. ROA.901-902.

In 2016, she worked with Thorn on another similar survey of 316 survivors of minor sex trafficking. ROA.11798. But respondents to the surveys who had been trafficked as adults, and not as minors, were specifically excluded from the analysis, leaving a total of 260 respondents. *Id.*

Of the 115 respondents in the 2012 survey, 28% indicated they had been trafficked in a strip club whereas 24% of the 260 respondents in the 2016 indicated they had been trafficked in a strip club. ROA.11754,11798-11799.

Dr. Bouche testified that her surveys were in the form of "purposive sampling."

ROA 906. Those who were sampled were known victims of human trafficking from across the United States already receiving services from non-profit organizations, who then agreed to participate in the survey. ROA. 903-906, ROA. 11748-11749. This methodology is not a random sample survey; it was a non-probability sample. *Id.* Thus, regardless of the specific population surveyed, she would not recommend making any statistical inferences from the sample of a purposive survey to the general population from which that sample is drawn. ROA.909-910; ROA 1180.

Notably, Dr. Bouche has never conducted any surveys or research concerning adult bookstores, adult video stores or adult arcades. ROA.11808. She admitted that the studies that she conducted with Thorn in 2012 and 2016 do not provide any evidence of employees at adult bookstores, adult arcades, or adult movie theaters being victims of human trafficking. *Id.*

Indeed, Dr. Bouche conceded at trial that she had *no evidence* of any employee of an adult bookstore, arcade, or movie theater ever being a victim of human trafficking. *Id.*

Dr. Bouche also acknowledged that S.B. 315 applies to every conceivable position at an adult nightclub, including, among others, managers, floor hosts, office workers, marketing or social media persons, janitors, bartenders, food servers, cooks, door persons, security guards, disc jockeys, stand up comedians, valets, parking lot

attendants or bathroom attendants. ROA. 11763-11765.

However, Dr. Bouche testified at trial that the State's interest in reducing trafficking could be achieved effectively if S.B. 315 had been narrowly drawn to regulate only 18-20 year-old entertainers at adult nightclubs. Indeed, at the conclusion of the cross-examination of Dr. Bouche, the Court inquired of her as follows:

> THE COURT:...Dr. Bouche, following up on I think the gist of some of his later questions, in sharing your opinion about the reason that certain people between the ages of 18 and 20 would be, in your words, vulnerable to exploitation by sex traffickers, you listed as a hypothesis for why that might be the fact that they were being employed as dancers or entertainers and you used -- I think you hypothesized that it may be that the process was such that they would be desensitized by dancing and displaying themselves and that might be a reason why they would be at heightened risk for being targets of sex -- of human trafficking. Is that generally -- did I get that generally right?

> THE WITNESS: Generally. I think it depends on at what point we're talking. So there's individuals that will work as a dancer at the strip club on their own and then, will be recruited and so, they've already been desensitized to the process of, you know, displaying sex, performances and sex acts in front of people. They've already gone through that process and then, a trafficker will recruit them from there. They're already dancing and then, he says, you know what, you don't have to pay your fee to the strip club anymore. I'll pay your fee for you. Let's split the profits half and half and then, go from there. So that's some of them have already been desensitized. Then also the ones that have been newly recruited by a trafficker have never performed sex acts before and will be forced to go work at the strip club in order to become desensitized to perform other types of sex acts.

> THE COURT: Work at a strip club as an entertainer?

THE WITNESS: Yes.

THE COURT: Okay. So in both cases, though, those individuals would be -- specifically would be entertainers, correct?

THE WITNESS: Yes.

THE COURT: Okay. **So is there anything to suggest that an 18-to-20-year-old male performing the duties of a bookkeeper or parking lot attendant would be subject to any of those risks of exploitation**?

THE WITNESS: **There is not that evidence that I have**.

THE COURT: If the state of Texas had chosen to more narrowly tailor this law to the population that you've identified as the state's expert as the population that is vulnerable and worthy of protection by this law, **if they had narrowed it to just those people and that is 18-to-20-year-old entertainers or dancers, would that address the vast majority of the risk and danger that you've identified as justifying this law**?

THE WITNESS: **I believe that that was the intent when -- I would say yes**.

ROA. 11809-11811. (emphasis added).

C.    Defendants' Fact Witness, Attorney Cara Foos Pierce

At the outset, Defendants called Ms. Cara Foos Pierce to testify only as a fact witness in this matter and not as an expert witness. Counsel for Defendants sent correspondence to counsel for Plaintiffs prior to Ms. Pierce's deposition specifically stating, "Ms. Pierce will not serve as our expert witness in this case." ROA. 10016. Thus, the district court erred in considering Ms. Pierce's testimony as expert

testimony.  ROA. 11398 ("Defendants introduced two expert witnesses at trial, the first of whom was Pierce, a former federal sex-trafficking prosecutor.").

Cara Foos Pierce is  a former Assistant United States Attorney who served as the human trafficking coordinator for the Northern District of Texas. ROA. 11820. She also served as the chief of the human trafficking division for the office of the Texas Attorney General. ROA.11822.

She testified about her human trafficking cases in Texas in front of the Texas Legislature during consideration of S.B. 315. ROA.11848.

For that testimony, Ms. Pierce prepared documents that included "talking points," which were produced in discovery in this case. ROA.11848. Those talking points referenced her experience with strip clubs and her view that raising the age of employment of dancers at strip clubs to 21 would be beneficial. ROA.11849.

None of her talking points for her testimony before the legislature mentioned people working in other capacities at strip clubs besides entertainers. Nor did they mention adult bookstores, adult video stores or adult arcades. ROA.11848-11852.

Ms. Pierce also testified at the preliminary injunction hearing in this case, and testified that over a ten year period from 2010-2020 she prosecuted approximately 80 human trafficking cases. Of those 80 cases, she testified that 46 involved sexually oriented businesses. ROA.11829.

A list of those cases was produced in discovery in this case. ROA.1018-1035. The list was broken down by the 46 cases she said involved sexually oriented businesses and the remaining cases that did not. *Id.*; ROA.11854-11855.

However, the list revealed that, in fact, there were not 46 separate cases. Rather, there were only 17 separate cases, some of which charged multiple defendants who were joined in a single indictment under Rule 8(b) of the Federal Rules of Criminal Procedure. ROA. 1042-1043; ROA.11858-11861.

Ms. Pierce's explanation for this discrepancy was that she counted each person named in an indictment as a separate sex trafficking case. But in fact there were only 17 separate cases over the 10 year period (less than 2 per year) involving a total of 46 defendants. *Id.*

At her deposition, Plaintiffs introduced a voluminous set of documents from those cases. These included the dockets, indictments or superseding indictments or informations and any plea agreements resolving those cases. Where factual resumes or stipulations signed by the government and the defendants were available, they were also offered. And where opinions by the district court or the Fifth Circuit outlining the facts of the case were available they were presented as well. ROA. 11861-1184. Those exhibits total over 1,000 pages of documents. ROA.1279-2383.

From the publicly available court documents, the basic facts of the 17 cases emerged. In most of those cases, the central facts of the crimes prosecuted focused

on trafficking through the internet, at hotels and motels and at illegal massage parlors.

Indeed, among the over 1,000 pages of court records available from each case introduced at her deposition, there were only three references to adult nightclubs at all. ROA.11864.

On direct examination at trial, Ms. Pierce attempted to explain that the dearth of references to adult night clubs was due to the fact that the case documents were not detailed and only set forth information related to the essential elements of the offense. ROA.11830-11833.

But the court records and case documents are far from bare bones pleadings. Rather, those records contain substantial details about each case. And unlike adult night clubs, other venues and means of committing trafficking offenses such as the internet, hotels, private residences and illegal massage parlors are prominently and repeatedly referenced. ROA.11861-11866.

Ms. Pierce also testified at her deposition that, in the cases first initiated by a criminal complaint, under Federal Rule of Crim. Pro. 3, rather than by indictment, the complaints would include more detailed information about the facts of the case. ROA. 11867-68.

A subsequent review of the dockets in the 17 cases, which are exhibits to her deposition, revealed that six complaints were available from the cases on her list. ROA.2313-2383; ROA.11868. Of those six complaints, there were only two

references to adult nightclubs. ROA.11868-11869.

Thus, despite the large quantity of documents totaling over 1,000 pages in the record from Ms. Pierce's cases, there are only five total references to adult night clubs, and those were found in four of the 17 cases. ROA. 11864-11869.

At trial, over Plaintiff's objection, Ms. Pierce added to the publicly available information from those case documents and testified from what she had learned from statements made by law enforcement and the victims in those cases. ROA.11834-11840. Much of that inadmissible hearsay involved claims that many of the victims in those 17 cases had been dancers at adult nightclubs who had been groomed and recruited by pimps and then forced to engage in commercial sex acts or had, at least, some nexus to adult nightclubs. *Id.*

Ms. Pierce, who prosecuted sex trafficking cases for a decade, testified that she never had a case where any employee of an adult bookstore, adult video store or adult arcade was a victim of trafficking. ROA. 11864-11865.[5]

---

[5] In addition, Ms. Pierce testified, over objection, that in one of her cases, she learned that a minor was trafficked in a private viewing room by her pimp at a New Fine Arts store, different from Plaintiff New Fine Arts West, almost ten years ago. ROA. 11835. The district court noted that hearsay testimony in footnote 3 of its opinion. ROA. 11404. Ms. Pierce's hearsay testimony was never reported in any case document concerning the defendant's case and never brought to New Fine Art's attention by law enforcement. ROA 9871. But, in any event, there is nothing in the record to demonstrate that an *employee* of New Fine Arts, or any other retail adult establishment, has ever been a victim of sex trafficking at any age.

Ms. Pierce also never had a human trafficking case involving an employee of an adult nightclub who was a male. ROA. 11866.

Moreover, Ms. Pierce did not have any evidence that anyone, either male or female, working in positions other than as dancers have been victims of trafficking. She testified that, over her career prosecuting sex trafficking cases, she remembered two victims who had worked at an adult nightclub in any other capacity: one worked as a dancer and also as a waitress and the other worked as a dancer and also as a bartender. ROA. 11866.

## II. THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The district court applied intermediate scrutiny to S.B. 315.[6] More specifically, it applied the four-part test from *United States v. O'Brien*, 391 U.S. 367, 377 (1968), and noted that the second and fourth factors of that test formed the basis of the parties' dispute. ROA. 11402.[7]

---

[6] Plaintiffs submit that strict scrutiny rather than intermediate scrutiny applies to S.B. 315 because the secondary effects doctrine does not survive *Reed v. Town of Gilbert*, 576 U.S. 155 (2015) and *City of Austin v. Reagan National Advertising of Austin*, LLC, 142 S. Ct. 1464 (2022). Plaintiffs recognize, however, that in *Assoc. of Clubs Execs. v. City of Dallas,* 83 F.4th 958, 969 (5th Cir. 2023) this Court disagreed and held the secondary effects doctrine remains viable. Thus Plaintiffs present the argument to preserve it in the event of further review.

[7] It should be noted that the *O'Brien* test applies to general conduct regulations that incidentally restrict speech. Regulations aimed at the purported secondary effects of sexually oriented businesses are subject to the more traditional intermediate

(continued...)

In analyzing the second *O'Brien* factor, whether S.B. 315 furthers a substantial governmental interest, the district court noted that Defendants' evidentiary burden is not heavy. ROA. 11403 *citing Doe I. v. Landry*, 909 F.3d 99, 109 (5th Cir. 2018) ("The evidentiary burden to support the governmental interest is light.").

The district court concluded that there was sufficient evidence in the record to demonstrate that S.B. 315 furthers the State's interest in reducing human trafficking at sexually oriented businesses. ROA. 11403. It noted that Defendants' evidence established that sex trafficking occurs at sexually oriented businesses at higher rates than other businesses and that young adults are frequent victims of trafficking. ROA. 11403. Although it noted that the "nexus–whether young adults at SOBs are likely to trafficked–is less well documented," the court stated that did not alter its conclusion that Defendants met their light evidentiary burden as to the second factor. ROA. 11404.

The district then turned to the fourth *O'Brien* factor, which asks whether S.B. 315's restriction on First Amendment freedoms is no greater than is essential to the

---

[7](...continued)
scrutiny test for time, place and manner regulations. *See City of Renton v. Playtime Theatres*, 475 U.S. 41, 42 (1986)*; City of Los Angeles v. Alameda Books, Inc*., 535 U.S. 425, 434 (2002). Thus, it is more accurate to apply the test from *Renton* and *Alameda Books* to S.B. 315. Nevertheless, the two test tests "embody much the same standards." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991); *see also Turner Broad Sys., v. FCC*, 512 U.S. 622, 662 (1994).

furtherance of that interest. Under this factor, the government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance the State' goals. ROA. 11406 *citing McCullen v. Coakley*, 575 U.S. 464 (2014). *See e.g., City of Renton v. Playtime Theatres*, 475 U.S. 41, 42 (1986) (emphasizing, in support of its decision to uphold a zoning ordinance aimed at secondary effects, that the regulation was narrowly tailored "to affect only that category of [businesses] shown to produce the unwanted secondary effects...").

 The district court found, as a factual matter, that "S.B. 315 plainly regulates more than necessary to stop sex trafficking, as it prohibits all employment of 18-to-20-year-olds at SOBs. This ban applies regardless of whether those employment positions are considered vulnerable to trafficking." ROA.11406.

The district court further found on this record that employees who work at sexually oriented businesses in positions other than dancers, "are *not* likely to be trafficked..." ROA. 11407 (emphasis added). Indeed, the court found that "S.B. 315 regulates broad swaths of employment at SOBs, regardless of whether they are tied to sex trafficking." ROA. 11409.

However, the district court proceeded to conclude that these factual findings were not fatal to the law's constitutionality because, "[w]hile S.B. 315 may burden employees who are not especially vulnerable to trafficking, those employees' positions also lack First Amendment coverage." ROA.11407.

More specifically, the district court concluded that employees of sexually oriented businesses who work in positions other than as dancers "have no demonstrated First Amendment expression intertwined with their jobs." ROA. 11406. According to the court, those employees "are not likely to be trafficked, but they also have no expressive speech tied to their employment." ROA. 11407.

Because, in its view, only dancers implicate the First Amendment and the Defendants had produced sufficient evidence that prohibiting 18-20 year olds from working as dancers furthers the State's interest in reducing trafficking, the court upheld S.B. 315.

For the same reasons, the district court concluded, with respect to Plaintiffs' overbreadth claim, that although the law regulates "broad swaths of employment...regardless of whether they are tied to sex trafficking," S.B. 315 was not unconstitutionally overbroad. ROA. 11409.

## SUMMARY OF THE ARGUMENT

The district correctly court found that S.B. 315's total ban on the employment of adults between the ages of 18-20 at sexually oriented businesses plainly regulates more than what is necessary to further the state's interest. ROA. 11407. Defendants did not introduce any evidence that any employees of adult bookstores, adult video stores or adult arcades have ever been trafficked. Nor did Defendants introduce evidence that employees at adult nightclubs other than dancers have ever been

trafficked.

However, the district court determined that S.B. 315 survived intermediate scrutiny on the theory that employees at sexually oriented businesses, other than dancers, do not engage in speech themselves and they do not implicate the First Amendment.

That legal conclusion ignored the fact that employees of adult bookstores/arcades directly disseminate constitutionally protected expression. Furthermore, employees at adult nightclubs who do not perform as entertainers also facilitate the dissemination of expression and are necessary to the speech process at these businesses.

In any case, Plaintiffs are engaging in speech and they are subject to S.B. 315's burdens precisely because of the content of the expression they disseminate. Therefore, under this Court's decision in *Illusions–Dallas Private Club, Inc. v. Steen*, 482 F.3d 299 (5th Cir. 2007), Defendants must prove that S.B. 315's prohibition on the employment of 18-20 year-olds in those capacities furthers the State's interest in reducing human trafficking in a narrowly tailored way. The district court's factual findings demonstrates they have not.

Moreover, under intermediate scrutiny, the district court failed to consider that Defendants did not show that any less-speech restrictive alternatives would not have adequately served the state's interest such as employee training, employee

verification and background screening, and the posting of human trafficking awareness signs on business premises.

Finally, the district court also correctly found that the law regulates "large swaths" of employment at sexually oriented businesses, "regardless of whether they are tied to sex trafficking" and that it "plainly regulates" more than is necessary. ROA.11406-11409. These findings should have also compelled the conclusion that S.B. 315 should be struck down as overbroad.

## STANDARD OF REVIEW

On appeal from a bench trial, this Court reviews the district court's factual findings for clear error and its conclusions of law *de novo*. *Hess Corp v. Schlumberger Tech. Corp.*, 26 F. 4th 229, 232-33 (5th Cir. 2022).

## ARGUMENT

I.    AS APPLIED TO ADULT BOOKSTORES/ARCADES AND TO ADULT NIGHTCLUB PERSONNEL OTHER THAN ENTERTAINERS, S.B. 315 IS UNCONSTITUTIONAL.

The district court found, as a factual matter, that "S.B. 315 plainly regulates more than necessary to stop sex trafficking, as it prohibits all employment of 18-to-20-year-olds at SOBs. This ban applies regardless of whether those employment positions are considered vulnerable to trafficking." ROA.11406.

Indeed, employees who work at sexually oriented businesses in positions other than dancers, "are *not* likely to be trafficked..." ROA. 11407 (emphasis added).

Nonetheless, "S.B. 315 regulates broad swaths of employment at SOBs, regardless of whether they are tied to sex trafficking." ROA. 11409. Thus, "S.B. 315 sweeps broader than necessary..." ROA. 11407.

These factual findings were not clearly erroneous. Indeed, the evidence compelled those findings.

Never in Ms. Pierce's career as a prosecutor did she have a victim who was an employee of an adult bookstore, adult video store or adult arcade. ROA. 11864-11865. Dr. Bouche also had no evidence that any employee of these businesses has ever been trafficked. ROA.11808-11809.

Neither Ms. Pierce nor Dr. Bouche had evidence of any males ever being victims of sex trafficking at adult nightclubs. ROA. 11808-11809, ROA. 11866.

And there is no evidence that anyone, either male or female, working in positions other than as dancers were ever victims. Even the two examples Ms. Pierce suggested during her testimony were a dancer who had also worked as a waitress and a dancer who had also worked as a bartender. ROA. 11865.

Perhaps most notably, Dr. Bouche, Defendants' own expert, testified at trial that if S.B. 315 only regulated entertainers at adult nightclubs, the state's interest in reducing trafficking would still be achieved:

> THE COURT: If the State of Texas had chosen to more narrowly tailor this law to the population that you've identified as the state's expert as the population that is vulnerable and worthy of protection by this law,

**if they had narrowed it to just those people and that is 18-to-20-year-old entertainers or dancers, would that address the vast majority of the risk and danger that you've identified as justifying this law**?

THE WITNESS: **I believe that that was the intent when -- I would say yes**.

ROA. 11811. (emphasis added).

The district court, nonetheless, upheld S.B. 315 under intermediate scrutiny on the theory that none of the employees of sexually oriented businesses, other than dancers, have "any demonstrated expression intertwined with their jobs." ROA. 11406. Therefore, the court held, the ban on the employment of 18-20 year olds in sexually oriented businesses does not "implicate the First Amendment expression of the non-performing workers." ROA.11407.

This legal conclusion (which is subject to *de novo* review by this Court) is erroneous on two grounds.

First, adult bookstore/arcade employees are, in fact, directly involved in disseminating constitutionally protected speech. And non-performing personnel in adult nightclubs play essential roles in the production and presentation to the audience of the constitutionally protected erotic dance performances. Without them the show could not go on.

Second, even if non-performing employees are not themselves engaged in speech, the plaintiff businesses *are* engaged in speech. S.B. 315 burdens those speech

businesses by prohibiting them from hiring 18-20 year olds. And, therefore, that burden imposed on sexually oriented businesses must further a substantial governmental interest, regardless of the roles served by those non-performing employees. That is the teaching of this Court's decision in *Illusions–Dallas Private Club, Inc. v. Steen*, 482 F.3d 299 (5th Cir. 2007).

## A.   Adult Bookstore/Arcade Employees

Employees at adult bookstores, adult video stores, and adult arcades directly disseminate constitutionally protected expression. Amada Man, who worked as a clerk at Plaintiff New Fine Arts, testified at the preliminary injunction hearing that, in her employment capacity, she sells adult magazines, like Playboy, and sexually oriented movies and promotes various products and media to customers. ROA.11476-11477. Indeed, New Fine Arts carries numerous constitutionally protected adult media items, including "a couple thousand" dvds and offers viewing booths. ROA. 10019. At any given time, there are generally two to five employees on duty, who are selling  the store's constitutionally protected material, stocking and displaying that material for patrons, providing customer service in connection with selling that material and performing the numerous other tasks associated with working in an adult bookstore. *See* ROA.10030.

Case law has long demonstrated that these employees are engaging in conduct

that is protected under the First Amendment. *Smith v. California*, 361 U.S. 147, 150 (1959) ("Certainly a retail bookseller plays a most significant role in the process of the distribution of books."); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 65, n. 6 (1963) ("The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication ..."); *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) ("The right of freedom of speech and press ... embraces the right to distribute literature, and necessarily protects the right to receive it.").  Indeed, in criminal prosecutions for selling obscene books, magazines or movies, it is the store clerk or manager who is often charged. That could not happen if the store employees were not directly involved in selling expressive works claimed to be obscene. The very issue in those cases is whether the material sold is protected by the First Amendment or unprotected obscenity. *See e.g., Roaden v. Kentucky,* 413 U.S. 496 (1973) (theater manager charged for presenting allegedly obscene film); *Heller v. New York*, 413 U.S. 483 (1973) (same);  *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979) (store clerk charged for selling two adult films and operating the adult bookstore at issue); *Macon v. Maryland*, 472 U.S. 463 (1985) (store clerk charged for selling allegedly obscene magazine at adult bookstore); *Pope v. Illinois*, 481 U.S. 497 (1987) (same).

**B.     Non-Performing Adult Nightclub Employees.**

Protected expression frequently encompasses a sequence of acts by different parties to produce the same work. The Supreme Court has, thus, recognized that "l]aws enacted to control or suppress speech may operate at different points in the speech process." *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 336 (2010).

The protections offered by the First Amendment must extend to each phase of the "speech process" if they are to have any effect at all, as a "regulation limiting the creation of [speech] curtails expression as effectively as a regulation limiting its display." *Buehrle v. City of Key W.*, 813 F.3d 973, 977 (11th Cir. 2015). *See also Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("...there is no fixed First Amendment line between the act of creating speech and the speech itself.") *(*quotation omitted*); Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 400 (2000) (Breyer, J., concurring) ("A decision to contribute money to a campaign is a matter of First Amendment concern–not because money is speech (it is not); but because it *enables* speech") (emphasis added)*.*

As Justice Scalia cautioned:

In any economy operated on even the most rudimentary principles of division of labor, effective public communication requires the speaker to make use of the services of others. An author may write a novel, but

he will seldom publish and distribute it himself. A freelance reporter may write a story, but he will rarely edit, print, and deliver it to subscribers. To a government bent on suppressing speech, this mode of organization presents opportunities: Control any cog in the machine, and you can halt the whole apparatus. License printers, and it matters little whether authors are still free to write. Restrict the sale of books, and it matters little who prints them. Predictably, repressive regimes have exploited these principles by attacking all levels of the production and dissemination of ideas. *See, e.g.*, Printing Act of 1662, 14 Car. II, ch. 33, §§ 1, 4, 7 (punishing printers, importers, and booksellers); Printing Act of 1649, 2 Acts and Ordinances of the Interregnum 245, 246, 250 (punishing authors, printers, booksellers, importers, and buyers). In response to this threat, we have interpreted the First Amendment broadly. *See, e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 65, n. 6, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) ("The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication ...").

*McConnell v. Federal Election Com'n*, 540 U.S. 93, 252 (2003) (Scalia, J., concurring in part and dissenting in part) *rev'd in part, Citizens United*, 558 U.S. at 365–66.

Non-performing personnel in adult nightclubs play essential roles in the production and presentation of constitutionally protected entertainment. Some play music, set up the stage or control the lights for performances. Others collect admission fees (similar to a ticket-taker) or serve customers. Still others manage operations, provide security, and ensure the cleanliness of the venue to enhance and make the experience of the audience in viewing the constitutionally protected expression an enjoyable one. But all are necessary if the business is to succeed in its

primary function of presenting erotic dancing to its audience. Thus their jobs are, in fact, intertwined with and essential to the live performances protected by the First Amendment.

**C.** **Under This Court's Decision in *Illusions–Dallas Private Club, Inc. v. Steen*, 482 F.3d 299 (5th Cir. 2007), the Prohibition on Sexually Oriented Businesses Employing Adults Ages 18-20 in Non-Performing Jobs Must Further the Governmental Interest In Reducing Human Trafficking in a Narrowly Tailored Way.**

In *Illusions,* adult nightclubs challenged a Texas statute that prevented sexually oriented businesses, as defined under Section 243.002 of the Local Government Code, (the same definitional section employed by S.B. 315), located in certain dry political subdivisions, from obtaining or renewing private club permits to serve alcohol.

The State argued in that case that the statute, "regulates no aspect of expression, does not restrict the time, place, or manner of erotic expression, and does not have even an incidental impact on First Amendment freedoms because nothing about it prevents erotic dance." *Id*. at 305. It further argued that the regulation "merely affects the rights of observers of erotic dancers to consume alcohol beverages and does not affect the rights of the dancers to engage in such expression or the rights of the Clubs to offer it." *Id.* at 307.

This Court rejected those arguments and explained that the State "overlooks

the fact that it is the Clubs, not the patrons, that are denied the ability to serve alcohol, since the Clubs are SOBs operating in dry political subdivisions." *Id*. Furthermore, this Court concluded that while the law did not restrict the expression offered by the Clubs, it did regulate the place or manner in which the erotic dancing occurred by not allowing the clubs to obtain permits allowing the service of alcohol. *Id*.

Thus, the First Amendment applied and it did not matter that the underlying conduct (the sale and consumption of alcohol) by itself was not protected by the First Amendment. *Id*. at 307. The prohibition on the sale of alcohol in that case had to be shown to further the state's interest in reducing secondary effects. *Id.* at 312.

Applying *Illusions* to this case, Plaintiffs are denied the ability to have 18-20 year old adults serve in non-performing capacities at their establishments precisely because they are sexually oriented businesses. That is why that burden imposed on sexually oriented businesses has to further a substantial governmental interest. And it matters not whether the positions for which sexually oriented businesses may not hire 18-20 year olds involve engaging in speech. Under *Illusions*, the government must still prove that that prohibition furthers the interest in reducing human trafficking.

And the district court clearly and correctly found, as a factual matter, that it does not. Rather, it found that S.B. 315, "plainly regulate more than necessary to stop

sex trafficking" and prohibited all employment of 18-20 year-olds notwithstanding that non-performers are "not likely to be trafficked." ROA. 11407-11408.

The district court's reliance on *Hang On, Inc. v. City of Arlington*, 65 F. 3d 1248 (5th Cir. 1995) was also misplaced. At issue in that case was an ordinance that prohibited employees of an adult night club, while appearing in a state of nudity, from touching, or being touched by, customers. The plaintiff adult nightclub "did not claim any denial of its own First Amendment rights" but this Court found that it had standing to challenge the provision as unconstitutionally overbroad in violation of the First Amendment rights of its employees and customers. *Id.* at 1252.

It then rejected the plaintiff's argument that the ordinance was overbroad simply because it applied to all employees in a state of nudity, not just dancers. While recognizing that nude dancing was constitutionally protected expression, it stated "Nonperforming nude employees...cannot claim First Amendment protection solely by virtue of their nudity....Since employees not engaged in expressive conduct such as dancing have no First Amendment right to appear in the nude, applying the no-touch provision to non-performing nude employees does not make it overbroad." *Id.* at 1254.

The principle from *Hang On* is that nudity is protected as speech only when combined with some form of expression. Thus, there is no First Amendment right to

be nude while working as a bartender at an adult nightclub.

But, if an adult nightclub were prohibited by law from employing a bartender simply because it presented nude entertainment then, under *Illusions*, the First Amendment rights of the business are implicated and the state must prove, if evaluated under intermediate scrutiny, that its prohibition furthers a substantial governmental interest and that it is narrowly tailored to further that interest. *Alameda Books, Inc.,* 535 U.S. at 434.

## II. EVEN AS APPLIED TO THE PROHIBITION ON SEXUALLY ORIENTED BUSINESSES HIRING 18-20 YEAR-OLD ADULTS AS DANCERS, S.B. 315 IS UNCONSTITUTIONAL.

The district court relied on *Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018), to support its conclusion that S.B. 315's total ban on 18-20 year-old adults from performing in adult nightclubs furthers the State's interest in reducing trafficking. ROA.11403.

In *Landry*, this Court vacated a preliminary injunction against the enforcement of a Louisiana statute that required entertainers on premises licensed to serve alcohol and whose breasts and buttocks are exposed to view, to be 21 years of age or older. In doing so, it specifically explained that the regulation did not "burden substantially more speech than is necessary because it prohibits semi-nude dancing for 18-20-year-old individuals in alcohol-licensed clubs only; **they may still participate**

**in expressive conduct in non-alcohol-licensed establishments**." *Landry*, 909 F. 3d at 113 (emphasis added).

Thus, this Court suggested that if the law in that case had completely eliminated the opportunity for 18-20 year old adults to engage in erotic dancing at adult nightclubs, it would not survive intermediate scrutiny.

Here, of course, S.B. 315 does precisely that and deprives adult citizens between the ages of 18-20 of their First Amendment right to perform at all adult night clubs in the State of Texas. Indeed, it forbids them to work in any sexually oriented business in any capacity.

This is not a small distinction, as Defendants have not offered anything to dispute the fact that the majority of adult entertainers ages 18-20, or above for that matter, are not victims of or at risk of becoming victims of trafficking. The district court did not make any such finding.

Most of Attorney Pierce's human trafficking cases involved the internet, hotels and motels, private residences and illicit massage parlors, not sexually oriented businesses. Of the numerous publicly available documents recounting the facts from Ms. Pierce's 17 cases she claimed involved sexually oriented businesses, which comprised over one-thousand pages of exhibits at her deposition, there were only 5 references to strip clubs. Ms. Pierce's 17 cases, over a 10 year period, do not support

Defendants' claim that adults between the ages of 18-20 who perform at adult night clubs in Texas are at serious risk of being a victim of human trafficking

In addition, Dr. Bouche's database of federally prosecuted trafficking cases she created, which includes cases from 2000 to 2020, revealed there were very few trafficking cases involving strip clubs. ROA.11783-11784.

As for the two studies that she helped conduct, those surveyed *minors* who were victims of sex trafficking and specifically excluded respondents who had been trafficked as adults. Moreover, regardless of the specific population surveyed, she would not recommend making any statistical inferences from the sample of a purposive survey to the general population from which that sample is drawn. ROA.11790-11791, ROA. 11793-11795, ROA. 11800.

Notably, according to Dr. Bouche's own study, the top three most common venues for trafficking were street prostitution, online prostitution and escort services, and not adult nightclubs. ROA.11798.

Returning to first principles, "nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment." *X-Citement Video, supra*, 513 U.S. at 72. *A fortiorari*, erotic dancing by performers over the age of 17 is protected by the First Amendment.

The Supreme Court's First Amendment jurisprudence draws "vital distinctions

between words and deeds, between ideas and conduct." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).

In *Ashcroft*, the Court considered a federal law prohibiting "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in sexually explicit conduct." *Id.* at 241. Thus, the statute prohibited productions with performers who were young adults, but appeared to be minors, engaged in sexually explicit conduct.

The government attempted to justify the law by claiming that such images, even if not constituting child pornography, "whet the sexual appetites" of pedophiles thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of children. *Id*.

The Court struck down the law as unconstitutional under the First Amendment holding that "[t]he government may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time." *Id.* (internal citations omitted).

Thus, the Court held that the government cannot ban young adults from appearing in constitutionally protected sexually explicit productions in the name of protecting children.

In this case, S.B. 315 bans young adults from performing erotic dance routines at adult nightclubs. And unlike *Landry*, S.B. 315's age restriction is not limited to performances in adult nightclubs that possess liquor licenses. Rather, it is a total prohibition on all 18-20 year-old adults from dancing at adult nightclubs, in violation of the First Amendment.

III.     S.B. 315 IS ALSO UNCONSTITUTIONAL BECAUSE DEFENDANTS HAVE OFFERED NO EVIDENCE THAT OTHER MEASURES TO COMBAT HUMAN TRAFFICKING WOULD BE INEFFECTIVE.

In *McCullen, supra*, at issue was a Massachusetts statute prohibiting persons to knowingly enter or remain within 35 feet of the entrance, exit, or driveway of a reproductive health facility.

The Court held that the statute was content neutral and thus subject to intermediate scrutiny in a challenge by persons who wanted to engage in counseling of women entering the facility for abortion services.

In concluding that the Commonwealth of Massachusetts had not met its burden to prove that its law was narrowly tailored, the Supreme Court noted that it offered only uncorroborated assertions that it had tried other methods to protect its interests and that those methods had failed. *See McCullen*, 573 U.S. at 496. ("Given the vital First Amendment interests at stake, it is not enough for [the government] simply to say that other approaches have not worked.").

Massachusetts had "not shown that it seriously undertook to address the problem with less intrusive tools readily available to it. Nor ha[d] it shown that it considered different methods that other jurisdictions have found effective." *Id.* at 494. Without such a showing by Massachusetts, said the Court, the law could not be considered narrowly tailored. *Id.* at 495 ("To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." (emphasis added)).

And in response to testimony that the 35 foot buffer zones would make law enforcement's job easier, the Court had this to say about efficiency:

> Of course they would. But that is not enough to satisfy the First Amendment. To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier. A painted line on the sidewalk is easy to enforce, but the prime objective of the First Amendment is not efficiency.

*Id.* at 495 (emphasis added).

In this case, there are numerous less speech restrictive alternatives than a total ban on all 18-20 year old adults working in sexually oriented businesses.

For example, the State of Texas could impose mandatory human trafficking training requirements for employees of sexually oriented businesses. Texas already

requires such training for employees of commercial lodging establishments. *See* Tx Bus. Com. Code 114.0051.

The State of Texas could also require that adult night clubs post human trafficking awareness signs like many other states already mandate. *See e.g.,* Indiana Code §7.1-3-23-20.5(c)(5); Florida Revised Statute §787.29(3)(a)(1); Maine Revise Statute Title 26, §879(3)(E). Texas  requires similar signs for commercial lodging establishments. *See* Tx Bus. Com. Code 114.0053.

In addition to requiring that employee identification be verified at sexually oriented businesses, *see* Tex. Labor Code 51.016, the State of Texas could require that criminal background checks be utilized, as the City of Dallas already does. *See* Dallas Ord. Sed. 41A-7.1.

All of these alternatives burden less speech than imposing a total ban on 18-20 year olds working in sexually oriented businesses. Yet, the State has done nothing in this case to show that these alternatives would fail to achieve its interest.

IV.   S.B. 315 IS UNCONSTITUTIONALLY OVERBROAD UNDER THE
      FIRST AMENDMENT.

In addition, for much of the same reasons that S.B. 315 fails the narrowly tailoring under intermediate scrutiny it is also unconstitutionally overbroad.

In *United States v. Stevens*, 559 U.S. 460, 473 (2010) the Court explained that

in evaluating whether a regulation is unconstitutionally overbroad, the number of its unconstitutional applications are compared to the regulation's "plainly" legitimate sweep. *Id.* If the law "sweeps [too] widely"–only to be limited by prosecutorial discretion, it fails to pass muster under the First Amendment. *Id. Stevens* concerned a federal statute purporting to criminalize the creation, sale, or possession of certain depictions of animal cruelty. The legislative background demonstrated the law was aimed at dogfighting depictions and "crush videos"–which featured the torture and killing of helpless animals and are said to appeal to persons with a specific sexual fetish. *Id.* at 465. In striking down the law as unconstitutionally overbroad, the Court noted that the market for unconstitutional applications, such as hunting magazines and videos, dwarfed the market for those types of videos. *Id.*

Here too, the number of 18-20 year-olds who perform at adult nightclubs and may have been a victim of sex trafficking, is dwarfed by *all* 18-20 year olds who work at adult bookstores/arcades and *all* 18-20 year-olds working in the many other jobs at adult nightclubs, none of whom are victims of trafficking.

As a result, S.B. 315 is also unconstitutionally overbroad on its face under the First Amendment.

CONCLUSION

For all of the foregoing reasons, the judgment of the district court should be

reversed and judgment should be rendered in favor of Plaintiffs-Appellants, or the case should be remanded to the district court with instructions to enter judgment declaring S.B. 315 unconstitutional under the First and Fourteenth Amendments and permanently enjoining its enforcement.

Respectfully submitted,

/s/ J. Michael Murray
J. MICHAEL MURRAY
(Ohio Bar No. 0019626)
jmmurray@bgmdlaw.com
WILLIAM C. LIVINGSTON
(Ohio Bar No. 0089538)
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio 44113-1949
(216) 781-5245 / (216) 781-8207 (Facsimile)

CASEY T. WALLACE
(Texas 00795827)
cwallace@wallaceallen.com
WALLACE & ALLEN, LLP
440 Louisiana Suite 590
Houston, Texas 77002
Tel. (713) 227-1744 / Fax: (713) 600-0034

Attorneys for Plaintiffs-Appellants

**CERTIFICATE OF SERVICE**

A copy of the foregoing Brief of Plaintiffs-Appellants was filed electronically with the Clerk of Courts on October 4, 2024. By using the appellate cm/ecf system, notice of the filing was sent to and service of it was perfected on the parties who are all registered users.

/s/ J. Michael Murray
J. MICHAEL MURRAY
(Ohio Bar No. 0019626)
jmmurray@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN

Attorney for Plaintiffs-Appellants

# CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32 (A)(7)(B) because:

    X    this brief contains 10,181 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) or

    \_\_\_\_    this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii)

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    X    this brief has been prepared in proportionally spaced typeface using 14 point Times New Roman font,

    \_\_\_\_    this brief has been prepared in a monospaced typeface using _____.

/s/ J. Michael Murray
J. MICHAEL MURRAY
(Ohio Bar No. 0019626)
BERKMAN, GORDON, MURRAY & DEVAN

Attorney for Plaintiffs-Appellants